## MORGAN *v.* MORGAN.

1. A wife, whose husband had left her without making any provision for her support and maintenance except to give her, and authorize her to collect, the rents from a certain house and lot, could maintain a suit for rents which had been collected by her father-in-law, who had recognized the arrangement between the husband and wife made for the latter's support, and who upon his own suggestion became the agent of the wife to collect such rents, although the gift of the rents by the husband was in parol. The testimony of the wife, tending to establish her claim under the arrangement referred to between herself and the

husband for the collection of the rents, was competent and admissible over the objection that such choses in action could only be assigned in writing, and could not be shown to have been made by a contract resting entirely in parol, as against one who had undertaken as her agent to collect the rents for her.

2. An ex parte affidavit made by the husband of the plaintiff, and a letter written by him tending to show that he did not have title to the property in question, could not affect the wife's right to recover the rents from an agent who, with knowledge of the arrangement between the wife and the husband, became her agent to collect the rents; and if the affidavit and letter of the husband were admissible in evidence at all, they were only admissible to illustrate the question of the husband's title, and "not for the purpose of defeating the defendant's claim to the rents."

3. In view.of the verdict returned, and under the rulings.which we have made above, the charges excepted to show no reason for the grant of a new trial.

No. 4734.　June 19, 1925.

Equitable petition.　Before Judge Ellis.　Fulton superior court. December 29, 1924.

Mrs. Sarah Morgan filed suit in Fulton superior court against A. P. Morgan, alleging in substance that she was married to Almand Morgan in 1898 and lived with him as his wife up until July 15, 1919, at which time he left, going to New York, and that she had not heard from him in more than three years, and did not know at the time the suit was filed where he was. Almand Morgan is the son of A. P. Morgan, the defendant in the case. In the year 1901 the plaintiff and·her husband moved into the house known as 404 Murphy Avenue, located on a tract of land described in the petition. They continued to occupy this property as their home up until June,.1916, at which time Almand Morgan left Atlanta with the United States Army to go to El Paso. After he left she continued to occupy the property for several months, and then rented it out furnished, so that she could join her husband, and she continued to rent the house and to collect the rents until after her husband left her in July, 1919. This property belonged to A. P. Morgan, the father of Almand Morgan, at the time the plaintiff and Almand Morgan moved into the house and took possession of it in 1901. It is claimed in the petition that after they moved into it and took possession they were in exclusive possession, without the payment of rent, exercised dominion and ownership over the property, returning and paying the taxes thereon in the name of Almand Morgan, and this continued until the latter left

her in 1919, and after that the plaintiff herself was in possession of the property and received the rents therefrom for several years, as set out in the petition; and during all of the time that Almand Morgan and the plaintiff had possession of the property A. P. Morgan claimed no dominion over the same. When Almand left in 1919 he told the plaintiff to rent the property and collect the rents from it and use the rents for her maintenance and support, telling her that he was leaving the State of Georgia on account of certain trouble that he had had, and would send for her later, and that she could have the income from the property for her own use. Accordingly, she continued to rent the property and collected the rents from it; and used the rents for her maintenance and support, until the possession of the property was taken by the defendant, A. P. Morgan, under the circumstances set out in the petition. About a year after Almand Morgan left, A. P. Morgan requested the plaintiff to have the matter of collection of the rents from the property turned over to him, he agreeing that he would collect the rents and look after the matter of repairs and upkeep of the property and the payment of the taxes, and pay the balance over to her. She did this, and for some time, that is, up until September, 1921, he did send her a check each month for the net rent after paying the expense of upkeep and other charges on the property, but after that he quit sending her any rent and refused to surrender possession to her. He obtained possession of the property by the means above mentioned, that is, to handle it as the agent of the plaintiff. She alleged that there had been a gift of the property from A. P. Morgan to his son Almand. She sued for the rents of the property from the time that the defendant ceased paying them over to her, and for the possession of the property. By amendment she alleged, in substance, that up to June, 1920, she was in possession of the property and collected the rents therefrom, that her possession was under a bona fide claim of right, and that at the request of the defendant she constituted him her agent for the purpose of looking after the renting and upkeep of the property and paying the net income therefrom to her; that he went into possession under this arrangement in July, 1920, as agent and trustee of the plaintiff; that after thus acquiring possession of the property as the agent and trustee of the plaintiff, the defendant did for a time, that is, up to September, 1921, hold

and manage the same as the agent and trustee of the plaintiff, paying over the net income to her, but that in September, 1921, he ceased to account to her, without ever having restored the possession of the property to her, and began appropriating the income from the property to his own use, contrary to the trust which had been reposed in him, and without ever having restored the possession to her began to assert an adverse claim to the property.

The defendant admitted in his answer that the property had originally belonged to him and that it belonged to him at the time Almand Morgan went into possession of it in 1901, but he asserted that there was never any gift of the property to Almand Morgan; that Almand occupied it as the tenant of the defendant, and as rental for the property he paid the taxes and repairs on the same. He also admitted that a year or more after Almand Morgan left he requested the plaintiff to turn over the matter of the renting of the property to him, and that he paid the net rental to her for a time; but he asserted that this was done as a matter of kindness and because the plaintiff was the wife of his son, and that as soon as he learned that his son had secured a divorce from the plaintiff he felt no longer under obligation to her, and therefore ceased to pay any rent to her.

On the trial of the case the jury returned a verdict finding for the plaintiff the sum of $1440, "without restoration or possession of the property." The defendant made a motion for a new trial, which was overruled, and he excepted.

*Key, McClelland & McClelland,* for plaintiff in error.

*Branch & Howard,* contra.

BECK, P. J. (After stating the foregoing facts.)

1. On the trial the plaintiff testified in substance to the facts set forth in her petition, and in addition thereto she introduced other testimony and documentary evidence in support of her petition. She proved by the renting agents that the property had been rented by them as the property of the plaintiff from the year 1919 up to and including the month of August, 1922; that beginning in July, 1920, the rents were paid over to A. P. Morgan, the defendant. Plaintiff introduced a number of letters from the defendant to her, concerning the property and the rent therefrom. These letters were not disputed by the defendant, and they show clearly that the property was turned over to the defendant to be

rented and looked after by him for the plaintiff. The first one of these letters is dated June 23, 1920, and in it he requests the plaintiff to allow him to look after the renting of the property, assigning as his reason for this that he wanted to be in position to control the matter as to the class of tenants occupying the property, and that he could get an increased rental sufficient to take care of the repairs and upkeep of the property; and he says: "Of course I would expect to let you have the amount of rent you are now getting, less its portion of the commission the real-estate parties charge. In case you consent to this, please let me know by return mail; also will thank you to write a letter to Mr. Adair, notifying him that I will take charge and look after the renting and upkeep of the place." In another letter, dated August 25, 1920, he explained to the plaintiff that he had just received the rent, and went into considerable detail explaining certain expenditures that he had made and deducted from the rents, leaving the net amount sent to her, out of $72.50 collected, $43.97. In a. letter, which seems to be the first one written after he had taken possession of the property, he renders a full account of the collections and expenditures, and says: "I will send you your rent each month as soon as the agent sends it to me, which I trust will be satisfactory." In September he sent her a bill for an account with a plumbing company for certain plumbing work and material, the bill being marked "paid by A. P. Morgan Grain Company," and having on it "repair toilet, Mrs. A. Morgan." Each month thereafter for a considerable period he wrote her a letter and sent her a check for the net amount of rent collected, referring more than once to the rent as "your rent;" as, for instance, in the letter of September 23, 1920, he says: "We have just received your rent for September," and in the letter of December 22, 1920, he says: "Doubtless you think I have delayed your rent money," etc. In his letter of August 4, 1921, after stating that he is enclosing his check for $50 "as rent for the house for the month of July," he explains, "I have repainted the house on the outside at a cost of about $100," and says that the parties who have been occupying it will vacate it the last of the month, "but glad to say I have leased it to another party at the same price for the next twelve months, which I trust will be satisfactory." On October 12, 1921, he wrote her explaining that he was late sending the September rent because the agent

had been late in sending it to him; and he says, "I am trying to get my agent to collect the rent in advance, as heretofore, and hope to do so."

A part of the plaintiff's testimony in support of her petition was as follows: "When he was leaving [referring to her husband] he wanted to know if I could live on the rents of the house and interest on some money until he could send for me, and I told him I could. He told me I could have the rents. I was to get the rents, and he told me to leave it in Mr. Adair's hands, it would be easier for me." On cross-examination she testified: "When my husband left here he asked me if I could live on the rents of this place and the interest on certain money. I don't know what money that was, I thought some money in the business, I don't know. I told him I thought I could live on it. That was all that occurred between us about the rents, just that little short conversation about it. That was not put in writing. It was just a brief conversation in which he asked me if I could live on the rent of that place and the interest on certain money that he talked about. I told him that I thought I could do so. That is all there was about it. I was just to live on that until he sent for me. That was all the gift there was and all he did about it between me and my husband, just there in that conversation. I was to get the rent. He wanted to know if I could live off of those until he sent for me, and I told him that I thought I could." After it was developed by the witness that there was no written assignment or gift of the rents to the wife from the husband, the defendant in the court below made a motion to exclude the evidence upon that subject just quoted, upon the ground "that the claim of plaintiff was predicated upon the contention that her husband had acquired title to the property in dispute, and that he, as owner of the property, gave to the plaintiff, his then wife, the rents of the property; . . that these rents and the right to collect the same were a chose in action, and that a gift or transfer or assignment of the same to the plaintiff was required by law to be in writing in order for her to proceed to collect them in her own name and in her own right." A further ground of the motion to exclude this evidence was, "that the evidence, when taken altogether, showed that there had not been a gift enforceable by law; that the requirements of a gift had not been complied with, and

that there had not been such delivery of the subject-matter of the gift as was required by law." The court overruled the motion to exclude the evidence referred to, and this ruling is assigned as error.

We are of the opinion that the court properly held that the evidence was competent and admissible. It is true that the right to collect the rents and any assignment of it would be a chose in action, and a chose in action must be assigned in writing. That is the general rule. But in the present case we must take into consideration the fact that the plaintiff in this case was the wife of the man who, as she claims, had told her that she could have and collect the rents. It was the intention of the husband, who was about to leave for some other part of the country for an indefinite stay, that the wife should collect and have the rents from the property for her support and maintenance. There was no other support and maintenance provided for her except these rents. She thought, according to her testimony, that there was some money due her husband which she would receive, but it transpired that this was not true. The rents were all that the husband put at the disposal of the wife for her support. The wife had, so far as appears from this testimony, under the circumstances shown by the evidence, an inchoate right to these rents; for the husband had made no other provision for her at the time he left her, and the rents were not more than were necessary for her support. We say that she had an inchoate right to these rents, or a part of them at least, under the evidence in this case; for it is not intimated that she had done anything that would forfeit her right to a support from the property of her husband, who had left her to go to another State; and a court of law or equity would have given her a judgment or decree fixing and establishing her rights under the evidence which was before the court at the trial of this case; and if the husband and wife entered into an agreement whereby they undertook to fix the amount necessary for the support of the plaintiff, a support to which she was entitled, she acquired a right and interest in the rents that would authorize her to maintain a suit for the rents against one who undertook to collect the rents and turn them over to her. And this last feature of the case must not be overlooked; for the defendant in this case, the father-in-law of the plaintiff, the father of the husband who had left without mak-

ing provision for his wife's support otherwise than by turning over the rents to her, accepted the arrangement, as the jury would have been authorized to find under the evidence, and agreed to become the agent of the wife in collecting these rents. At first the rents were collected for the wife at the suggestion of the husband by a real-estate firm in the city of Atlanta; but the defendant in this case wrote to petitioner, suggesting that he be allowed to look after the renting of the property, giving the reasons for making the change, and in the letter making this suggestion he says, "Of course I would expect to let you have the amount of rent you are now getting, less its portion of the commission the real-estate parties charge. In case you consent to this, please let me know by return mail; also will thank you to write a letter to Mr. Adair, notifying him that I will take charge and look after the renting and upkeep of the place." Upon his own suggestion the defendant in the case, as the jury would have been authorized to find, became the agent of the wife for the collection of the rents. He occupied a peculiarly confidential relation to the plaintiff, if her testimony is true and the facts are as she asserts them—and of this the jury were the judges; and he could not, standing in such a relation to her, repudiate her claim to the rents, which, as agent, he had collected, and deny her right to recover them. The evidence objected to was admissible under the peculiar facts of this case, and we are not called upon to pass upon the question as to whether or not the plaintiff would have been permitted to show the same state of facts if she had been proceeding against a tenant who had failed to pay the rents. "If one person obtains possession of land from another under an agreement to hold it for a special purpose, the latter is entitled to have the possession restored to him whenever the special purpose ends; and the person who so acquired the possession will not, while so holding it, be allowed to dispute the title of him from whom he acquired it." Powell on Actions for Land, § 359. See also Civil Code, § 3584.

2, 3. The rulings made in headnotes 2 and 3 require no elaboration.

*Judgment affirmed. All the Justices concur, except Gilbert, J., absent for providential cause.*